# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JONATHAN SALAZAR, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-19-20-SPS |
| | ) |
| ANDREW M. SAUL, | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** [1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jonathan Salazar requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 52). He has a high school education and has worked as a forklift operator, saw operator, truck driver, poultry hanger, and landscaper (Tr. 54, 68). The claimant alleges that he has been unable to work since July 5, 2010, due to left knee gout, partial amputation on the left foot, head trauma, and problems with his hands, arms, elbows, shoulders, and back (Tr. 284).

## Procedural History

On June 25, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 226-38). His applications were denied. ALJ Thomas John Wheeler conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 18, 2017 (Tr. 17-39). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found the claimant retained the residual functional capacity ("RFC") to perform a limited range of light work, *i. e.,* he could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand and/or walk four hours in an eight-hour workday, and sit six hours in an

eight-hour workday (Tr. 30). Due to psychologically-based factors, the ALJ found the claimant could understand, remember, and carry out simple instructions; make simple decisions; attend and concentrate for extended periods, defined as two-hour increments; interact appropriately with co-workers and supervisors; and respond appropriately to changes in a work setting (Tr. 30). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, laundry folder, bench assembler, and price marker (Tr. 37-39).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinions of consultative examiner Dr. Terry Kilgore, (ii) account for all of his impairments in formulating the RFC, and (iii) find him disabled under the Medical-Vocational Guidelines (the "Grids"). The Court finds these contentions unpersuasive.

The ALJ found that the claimant had the severe impairments of bilateral carpal tunnel syndrome, left elbow extensor carpi radialis brevis, cervical radiculopathy with left side median neuropathy, degenerative disc disease, osteomyelitis of the left foot, partial amputation of the left foot, degenerative joint disease of the bilateral knees, and mood disorder; the non-severe impairments of adrenal gland tumor, histoplasmosis of the lungs, hepatomegaly with steatosis, dysphagia, and history of substance abuse; but that his alleged rheumatoid arthritis and head trauma were not medically determinable (Tr. 19-27). The relevant medical records reveal that on September 6, 2011, the claimant underwent a left carpal tunnel release performed by Dr. James Bischoff and a left elbow extensor carpi

radialis brevis tendon repair and debridement performed by Dr. Bradford Boone (Tr. 542-43). At a follow-up appointment on December 1, 2011, Dr. Boone found full motion, good strength, and minimal tenderness in the claimant's left elbow (Tr. 526). He released the claimant from care for his left elbow with no permanent restrictions, noting he achieved a good result following surgery (Tr. 526). As to his left hand, Dr. Bischoff released the claimant to participate in activities without restriction on December 9, 2011 (Tr. 525). On January 12, 2012, Dr. Bischoff found the claimant reached maximum medical improvement, opined that he would not need continued medical maintenance for his left hand, and dismissed him from care (Tr. 524).

The claimant returned to Dr. Bischoff on February 28, 2012 and reported tingling and numbness in his right hand (Tr. 523). Dr. Bischoff referred the claimant for an EMG, the results of which documented carpal tunnel syndrome of the right hand, and the claimant underwent a right carpal tunnel release on August 31, 2012 (Tr. 522, 538-40). Dr. Bischoff released the claimant to participate in regular activities without restriction on November 11, 2012 (Tr. 519). At a follow-up appointment on December 18, 2012, Dr. Bischoff found the claimant reached maximum medical improvement as to his right hand and dismissed him from care (Tr. 518).

In connection with a worker's compensation claim, Dr. Stephen Wilson examined the claimant on February 20, 2013, and again on July 15, 2015 (Tr. 546-49, 756-59). In February 2013, Dr. Wilson noted the claimant demonstrated some weakness in his wrists, thumbs, and interosseous musculature as well as diminished dexterity with fine motor movements, but that he had normal range of motion in his wrists (Tr. 547-48). As to his

grip strength, the claimant produced seventy pounds of force with his right hand and forty-five pounds with his left hand (Tr. 547-48). Dr. Wilson indicated that the claimant would be an excellent candidate for vocational rehabilitation (Tr. 547). In July 2015, Dr. Wilson found the claimant produced nine pounds of force with his right hand and twenty-three pounds of force with his left hand (Tr. 758). He opined that the claimant was temporarily totally disabled as of that day and recommended further medical evaluation and treatment to include an updated EMG study (Tr. 759).

Dr. Terry Kilgore conducted two consultative physical examinations of the claimant (Tr. 695-702, 709-16). At the September 9, 2014 exam, Dr. Kilgore found, *inter alia,* normal range of motion in the claimant's hands, wrists, and elbows, and a bilateral grip strength of 4/5 (Tr. 697). He indicated that the claimant was able to dress and undress himself without any assistance (Tr. 697). In his functional evaluation assessment, Dr. Kilgore opined that the claimant could effectively oppose his thumbs to his fingertips and could manipulate small objects but could only occasionally grasp tools such as a hammer (Tr. 699). Dr. Kilgore had essentially identical findings at the second exam on January 27, 2015, except he described the claimant's hand strength of 4/5 as "minimally diminished" and he opined that the claimant could rarely grasp tools such as a hammer (Tr. 709-16).

On February 3, 2015, the claimant presented to primary care physician Dr. Peter Greene and reported a cough and congestion for approximately one month as well as pain in his right wrist that began when he was picking up brush in his yard (Tr. 900-01). Dr. Greene noted the claimant's lungs were clear, but he had mild tenderness on his right 2nd costochondral joint (Tr. 900). A chest x-ray taken that day revealed a left upper lobe

granuloma (Tr. 902). Due to the presence of nodules, Dr. Greene indicated that histoplasmosis and tuberculosis needed to be considered, but a tuberculosis skin test was negative (Tr. 900-01). A CT scan of the claimant's chest performed on February 5, 2015, revealed stable left upper lobe granulomas, a right adrenal gland mass, and no acute intrathoracic findings (Tr. 893). Dr. Greene prescribed an antibiotic and the claimant received no further treatment related to his lungs (Tr. 900). As to the claimant's right wrist, Dr. Greene diagnosed him with De Quervain's tenosynovitis and prescribed a two-week course of non-steroidal anti-inflammatory medication (Tr. 901).

On August 5, 2015, the claimant presented to primary care physician Dr. Myra Gregory and reported, *inter alia,* pain in his right wrist (Tr. 853). Dr. Gregory found full muscle strength but pain in the anatomical snuff box of his right wrist (Tr. 854-55). A right-hand x-ray revealed a soft tissue disruption versus large wart on the distal second finger but no osseous abnormality (Tr. 857). At a follow-up appointment on November 4, 2015, Dr. Gregory found normal grip strength in the claimant's arms (Tr. 812).

On December 29, 2015, the claimant presented to physician assistant Lisa Humphries and reported increasing pain in his wrists, hands, and joints (Tr. 790). Ms. Humphries found full strength bilaterally and recommended fast freeze and heat therapy (Tr. 792).

On May 10, 2017, Dr. Ashley Cogar examined the claimant in connection with his workers compensation claim (Tr. 1173-74). Dr. Cogar noted the claimant was able to make a fist with both hands, had no decreased sensation or obvious effusion, swelling or edema, but did have nodules that were tender to palpation (Tr. 1173). She also noted the claimant's

proximal interphalangeal joints had flexion contractures of varying degrees, with the middle ones being the most significant at fifteen degrees (Tr. 1173). X-rays of the claimant's hands taken that day showed moderate diffuse osteoarthritis most significant in the proximal interphalangeal joints (Tr. 1173).

State agency physician Dr. James Metcalf completed a physical RFC assessment on January 29, 2015 and found the claimant could perform the full range of light work (Tr. 83-84). State agency physician Dr. Sandra Spruiell completed a physical RFC assessment on July 14, 2015 and found the claimant could perform light work with four hours of standing and/or walking in an eight-hour workday (Tr. 118-22).

At the administrative hearing, the claimant testified that he was unable to work due to pain in his back and arms (Tr. 54-55). He rated his arm pain at eight on a ten-point scale and indicated that he had not taken pain medication since 2016 (Tr. 55). The claimant further testified that his medications fully resolved his pain but made him drowsy (Tr. 56). He indicated that he experiences numbness in his wrists and that it was difficult for him to twist or turn with his hands such as using screwdriver or opening a jar, and that he dropped things three times per day (Tr. 59-60). The claimant also stated that he drives with one hand, switching between each hand every four minutes (Tr. 61-62).

In his written opinion, the ALJ thoroughly discussed the treatment notes related to the claimant's hand, wrist, and elbow complaints at step two (Tr. 20-22). At step four, the ALJ found the claimant's hand, wrist, and elbow pain was intermittent and generally well-controlled with medication (Tr. 32-33). In support of such finding, the ALJ noted the claimant generally maintained good grip strength before and after his carpal tunnel release

surgeries, had no continued formal treatment after his surgeries, had no updated diagnostic testing, and maintained the ability to make a fist as recently as May 2017 (Tr. 32). The ALJ also noted that 2017 bilateral hand x-rays revealed moderate diffuse osteoarthritis and that the claimant had normal range of motion in his wrists, no tenderness to palpation, and no decreased sensation at Dr. Cogar's May 2017 examination (Tr. 32). In finding the claimant's histoplasmosis of the lungs non-severe at step two, the ALJ noted he did not require hospitalization, was not referred to a pulmonologist, did not take medication, and continued to smoke (Tr. 26). In discussing the opinion evidence, the ALJ thoroughly summarized the findings from both of Dr. Kilgore's consultative examinations at step two (Tr. 24). The ALJ then gave Dr. Kilgore's January 2015 opinion some weight, finding his opinion that the claimant could rarely effectively grasp tools such as a hammer "somewhat inconsistent" with his generally benign findings, including slightly reduced but normal overall range of motion in the claimant's wrists, no sensory loss in his first three fingers, hand strength of 4/5, normal grip, and normal fine motor control, as well as the claimant's ability to dress and undress himself without difficulty (Tr. 36).

The claimant first contends that the ALJ erred in evaluating Dr. Kilgore's consultative opinions. As to Dr. Kilgore's January 2015 opinion, the claimant specifically asserts that the ALJ ignored some of his examination findings and failed to account for his opinion that the claimant could rarely effectively grasp tools such as a hammer. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what

weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004), *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). The ALJ's treatment of Dr. Kilgore's January 2015 opinion, as described above, meets these standards. The ALJ specifically addressed his findings, and the Court finds that he considered each opinion in turn and gave numerous reasons, supported by the record, for adopting or not adopting the limitations described in them. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case.") [internal citation omitted].

    As to Dr. Kilgore's September 2014 opinion, the claimant correctly points out that the ALJ summarized this opinion but did not assign a specific weight to it. However, Dr. Kilgore's January 2015 opinion is more restrictive than his September 2014 opinion, and as set forth above, the ALJ properly discounted his January 2015 opinion (Tr. 695-716). Thus, the claimant has not shown how expressly weighing Dr. Kilgore's earlier and less

restrictive opinion would have resulted in a materially different RFC and therefore he cannot demonstrate any prejudice from the ALJ's error in this regard. Accordingly, the ALJ's failure to assign a specific weight to Dr. Kilgore's September 2014 opinion is harmless. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (holding the ALJ's failure to expressly weigh a medical opinion was harmless error where "[t]here [was] no reason to believe that a further analysis or weighing of [an] opinion could advance [the claimant's] claim of disability").

The claimant next contends that the ALJ did not account for his severe arm and hand impairments because he did not include any reaching or manipulative limitations in the RFC. The Courts finds that the ALJ did not, however, commit any error in his analysis of these impairments. The ALJ noted and discussed all the findings of the claimant's various treating, consultative, and reviewing physicians, and his opinion clearly indicates that he adequately considered the medical evidence of record related to the claimant's arms and hands in reaching his conclusion regarding the RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). The ALJ's conclusions "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2,

1996). The ALJ's treatment of the medical evidence related to the claimant's severe arm and hand impairments in this case meets these standards. Accordingly, the ALJ did not err by failing to include reaching or manipulative limitations in the RFC.

The claimant next argues that the ALJ erred at step four by failing to consider his non-severe lung histoplasmosis. The Court agrees that the ALJ is required to consider all of a claimant's impairments—both severe and non-severe—singly and in combination, when formulating a claimant's RFC. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].' "), *quoting Langley v. Barnhart*, 373 F.3d 1116, 1123–24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523. *See also Hill,* 289 Fed. Appx. at 292 ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. However, the claimant does not point to any evidence in the record showing that his non-severe lung histoplasmosis, either individually or in combination with his other impairments, caused functional limitations. *See Welch v. Colvin*, 566 Fed. Appx. 691, 695 (10th Cir. 2014) (finding harmless any error the ALJ made by not considering the combined effects of all of the claimant's impairments since there was no evidence that such impairments restricted the claimant's ability to work). As the ALJ correctly noted, the claimant was not hospitalized for this condition or referred to a pulmonologist, does not take medications to treat this condition, and continued to smoke after his diagnosis (Tr. 26).

The claimant next contends that his RFC limits him to sedentary work because the ALJ found he could stand and/or walk for four hours in an eight-hour workday, which is less than the six hours of standing and/or walking required for all light work jobs. Thus, the claimant contends that the ALJ erred by not applying the sedentary exertional table in the Grids to find him disabled. The claimant's argument misunderstands the requirements of light work. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour work-day." Soc. Sec. Rul. 83-10, 1983 WL 31251, *6. However, the ALJ did not find that the claimant could perform the full range of light work, he found the claimant could perform a limited range of light work involving standing and/or walking for up to four hours in an eight-hour workday. Furthermore, Soc. Sec. Rul. 83-10 itself contemplates light work that involves sitting most of the time. "A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work." *Id.* at *5. Accordingly, application of the sedentary table is inappropriate in this case and the ALJ did not err by failing to find the claimant disabled through such rules.

Lastly, the claimant argues that the ALJ erred by not applying Grids Rule 202.14 or Rule 202.21 to find him disabled. Contrary to the claimant's assertion, Rule 202.14 directs a decision of "not disabled" for a claimant who is between the ages of forty-five and forty-nine (defined as a "younger individual"), has been limited to light work, has a high school education or more, whose past work experience is skilled or semi-skilled, and whose skills are not transferable. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, §202.00, Table No. 2, Rule

202.14. Similarly, Rule 202.21 also directs a decision of "not disabled" for an individual who is between the ages of fifty and fifty-four (defined as "closely approaching advanced age") with the same education and previous work experience. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, §202.00, Table No. 2, Rule 202.21. In any event, application of the Grids is precluded here in light of the claimant's limitation to four hours of standing and/or walking in an eight-hour day. "[T]he presence of a material limitation beyond those encompassed within a given RFC precludes summary invocation of a grid rule to dispose of a disability claim." *Holbrook v. Colvin,* 521 Fed. Appx. 658, 661 (10th Cir. 2013), *citing Allen v. Barnhart,* 357 F.3d 1140, 1143 (10th Cir. 2004), *citing Channel v. Heckler,* 747 F.2d 577, 581–582 (10th Cir.1984) (collecting cases).

Despite the claimant's statements to the contrary, the essence of the claimant's appeal is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. *See Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

**Conclusion**

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 5th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**